**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

GARY MICHAEL NORTH,

Plaintiff,

v.

CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,

Defendant.

No. ED CV 13-2043-PLA

**MEMORANDUM OPINION AND ORDER**

**I.**

**PROCEEDINGS**

Plaintiff filed this action on November 14, 2013, seeking review of the Commissioner's denial of his applications for Disability Insurance Benefits and Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on December 9, 2013, and December 30, 2013. Pursuant to the Court's Order, the parties filed a Joint Stipulation on August 26, 2014, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

## II.

## BACKGROUND

Plaintiff was born on January 24, 1958. [Administrative Record ("AR") at 33, 125.] He has at least a high school education and past relevant work experience as a CNC machinist.[1] [AR at 33, 160.]

On July 16, 2010, plaintiff filed an application for a period of disability and Disability Insurance Benefits, and an application for Supplemental Security Income payments. [AR at 24, 125-28, 129-32.] In both applications, plaintiff alleged disability beginning on July 24, 2006. [AR at 24, 125, 129.] After the applications were denied initially, he filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 24, 68-69.] A hearing was held on October 20, 2011, at which time plaintiff appeared represented by a non-attorney representative and testified on his own behalf. [AR at 24, 39-60.] A vocational expert ("VE") also testified. [AR at 24, 54-59.] On March 15, 2012, the ALJ issued a decision concluding that plaintiff was not under a disability from July 24, 2006, through the date of the decision. [AR at 24-34.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 17-19.] On August 8, 2013, the Appeals Council denied review. [AR 11-16.] This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010).

---

[1] According to the vocational expert, CNC stands for Computer Numeral Control, and a CNC machinist programs the machine to make a part, "instead of actually standing there and adjusting things to make the part." [AR at 55.]

"Substantial evidence means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (internal quotation marks and citation omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (same). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (internal quotation marks and citation omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (internal quotation marks and citation omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.").

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

### A. THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995), as amended April 9, 1996. In the first step, the Commissioner must

determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., pt. 404, subpt. P, app. 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B. THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since his alleged onset date, July 24, 2006.[2] [AR at 26.] At step two, the ALJ concluded that plaintiff has the severe impairments of bilateral carpal tunnel syndrome, asthma, and depression. [Id.] At step three, the ALJ determined that plaintiff does not have an impairment or

---

[2] The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through December 31, 2012. [AR at 26.]

a combination of impairments that meets or medically equals any of the impairments in the Listings.[3] [Id.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[4] to perform light work, except frequent bilateral handling and fingering; avoid excess dust, fumes, and smoke; simple, repetitive tasks; occasional contact with the public; and work in solitude and not in coordination with others. [AR at 27.] At step four, based on plaintiff's RFC and the VE's testimony, the ALJ concluded that plaintiff is unable to perform his past relevant work as a CNC machinist. [AR at 33.] At step five, based on plaintiff's age, education, work experience, and RFC, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff could perform, including work as a sales attendant and an office helper. [AR at 33-34.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from July 24, 2006, through the date of the decision. [AR at 34.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ erred when he: (1) failed to give heavier weight to the opinion of plaintiff's treating psychiatrist; (2) identified jobs in his step five determination that were not consistent with the hypothetical posed to the VE or with plaintiff's RFC; and (3) assessed plaintiff's credibility. [Joint Stipulation ("JS") at 4.] For the following reasons, the Court agrees with plaintiff, in part, and remands this action for further proceedings.

---

[3] See 20 C.F.R. pt. 404, subpt. P, app. 1.

[4] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

## A. EVALUATION OF MEDICAL EVIDENCE

Plaintiff contends that the ALJ failed to provide specific and legitimate reasons for rejecting the February 2, 2007, and September 14, 2010, reports of treating psychiatrist, Thomas Curtis, M.D. [JS at 4-8.]

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. §§ 404.1502, 404.1527. "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at 830; Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222 (9th Cir. 2010). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830; Ryan, 528 F.3d at 1198.

"[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons." Carmickle, 533 F.3d at 1164 (internal quotation marks and citation omitted); Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Carmickle, 533 F.3d at 1164 (internal quotation marks and citation omitted); Ryan, 528 F.3d at 1198. The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick, 157 F.3d at 725. The ALJ "must set forth his own interpretations and explain why they, rather than the [treating or examining] doctors', are correct." Id.

### 1. Dr. Curtis's Opinions

Plaintiff treated with Dr. Curtis, or others in his office, bi-weekly from July 18, 2006, through September 14, 2010, in connection with plaintiff's workers' compensation claim. [AR at 308-463, 566-74, 621-30, 1176-79.]

On February 2, 2007, in connection with plaintiff's workers' compensation claim, Dr. Curtis completed an "Extraordinarily Complex Comprehensive Medical-Legal Evaluation and Permanent and Stationary Report with Psychological Test Results," that included a Mental and Behavioral Disorders Impairment Chart. [AR at 529-55.] In that chart, Dr. Curtis opined that plaintiff had moderate limitations in activities of daily living, social functioning, and adaption. [Id. at 548.] He reported that plaintiff had lost fifty pounds since the onset of his problems at work. [AR at 535.] Dr. Curtis also conducted a mental status examination, and administered a battery of psychological tests. [AR at 539-44.]

On September 14, 2010, Dr. Curtis provided a "Psychiatric/Psychological Impairment Questionnaire" in connection with plaintiff's workers' compensation action. [AR at 556-63.] Dr. Curtis diagnosed plaintiff with a Depressive Disorder (Not Otherwise Specified) with Anxiety. [AR at 556.] Plaintiff was then taking the medications Wellbutrin, Risperdal, and ProSom. [AR at 561.] Dr. Curtis noted plaintiff's primary symptoms of depression, anxiety, insomnia, fatigue, mistrust, hostility, irritability, feelings of worthlessness, concentration and memory impairment, and social withdrawal. [AR at 558.] He also completed a mental residual functional capacity assessment, finding that plaintiff suffers from moderate limitations in his ability to remember locations and work-like procedures, to understand and remember one or two-step instructions, to sustain ordinary routine without supervision; moderate limitations in his social interactions; and marked limitations in his ability to understand and remember detailed instructions, to maintain attention and concentration for extended periods, to perform activities within a schedule, maintain regular attendance, and to be punctual within customary tolerances, to work in coordination with or proximity to others without being distracted by them, to make simple work-related decisions, to complete a normal workweek without interruptions from psychologically-based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods. [AR at 559-61.] Dr. Curtis opined that plaintiff would be absent from work as a result of his impairments

or treatment more than three times a month, and that plaintiff was "unable to work at any job for the foreseeable future."[5] [AR at 556.]

On July 13, 2011, Dr. Curtis wrote a letter indicating that he had been treating plaintiff since July 18, 2006, and that plaintiff's depressive disorder with anxiety now included "defensiveness and denial." [AR at 630.] Dr. Curtis reported a number of clinical findings to support his diagnosis, including poor memory; appetite disturbance with weight changes; sleep and mood disturbance; recurrent panic attacks; anhedonia; pervasive loss of interests; inappropriate suspiciousness; paranoia; feelings of guilt and worthlessness; difficulty thinking and concentrating; social withdrawal; isolation; blunt, flat and inappropriate affect; decreased energy; and generalized persistent anxiety, hostility, and irritability. [Id.] He stated that plaintiff's primary symptoms were depression, anxiety, insomnia, fatigue, mistrustfulness, and memory impairment. [Id.] Dr. Curtis found plaintiff "precluded in his ability" to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule; maintain regular attendance; be punctual; work in coordination with or proximity to others without being distracted by them; make simple work-related decisions; complete a normal work week without interruptions; perform at a consistent pace without an unreasonable number and length of rest periods; travel to unfamiliar places; and use public transportation. [Id.] He found plaintiff "significantly limited" in his ability to remember locations and work-like procedures; understand, remember and carry out simple instructions; sustain ordinary routine without supervision; interact appropriately with the general public; ask simple questions; request assistance; accept instructions; respond appropriately to criticism from supervisors; get along with co-workers or peers without distracting them; maintain socially appropriate behavior; adhere to basic standards of neatness and cleanliness; respond appropriately to changes in the work setting; be aware of normal hazards and take appropriate precautions; set realistic goals; and make plans independently. [Id.] He opined that under stress plaintiff would become emotionally overwhelmed,

---

[5] The VE testified that an individual with the limitations set out in the ALJ's hypothetical, who would miss work more than three times per month due to his medical and psychiatric condition, would not be able to perform the jobs indicated by the VE. [AR at 59.]

mistrustful, and withdrawn; would experience deterioration in a work-like setting as he is incapable of tolerating even "'low stress' work situations"; would be absent from work more than three days per month; and that plaintiff's conditions and limitations had existed as long as plaintiff had been his patient. [Id.]

The ALJ gave "little, if any, weight" to Dr. Curtis's opinions, stating as follows:

> Temporary Total Disability (TTD) statements, in regards to a worker's compensation case are not relative [sic] to Social Security Disability and are rejected based on 20 CFR 404.1504 and 404.1527(e); 20 CFR 416.904 and 416.927(e), which allow outright rejection of conclusions of disability which are based on criteria other than Social Security Regulations. In addition, these statements are reserved to the Commissioner. Medical reports generated within the context of a workers' compensation claim are adversarial in nature – i.e., those reports submitted on behalf of the employee tend to maximize the nature and extent of the injury and resultant limitations, while the reports submitted on behalf of the employer tend to emphasize just the opposite. Therefore, the undersigned gives the opinion by Dr. Curtis little, if any, weight. Furthermore, the doctor's opinion is without substantial support from the other evidence of record, which obviously renders it less persuasive. The record indicates that the claimant's treatment plan was to continue psychotherapy, biofeedback, and psychotropic medications on an as needed basis, which does not corroborate such significant limitations provided by Dr. Curtis. In addition, there is no evidence of psychiatric hospitalization or the need for inpatient treatment. Moreover, it is emphasized that the claimant underwent the examination that formed the basis of the opinion in question not in an attempt to seek treatment for symptoms, but rather, through attorney referral and in connection with an effort to generate evidence for his worker's compensation case. Although such evidence is certainly legitimate and deserves due consideration, the context in which it was produced cannot be entirely ignored.

[AR at 32 (citation omitted).]

Accordingly, the ALJ rejected the opinions of Dr. Curtis for the following reasons: (1) Dr. Curtis's opinion on disability is an issue reserved for the Commissioner; (2) workers' compensation medical reports tend to be adversarial in nature, and maximize the claimant's limitations, and plaintiff underwent the examination in an attempt to generate evidence for his workers' compensation case, not to seek treatment for his symptoms; (3) Dr. Curtis's opinions are not supported by other evidence of record; and (4) there is no evidence of psychiatric hospitalization or inpatient treatment, and plaintiff's treatment plan, which includes taking medications on an "as needed basis," does not corroborate the significant limitations found by Dr. Curtis. [Id.]

**a. Dr. Curtis's Opinion on the Ultimate Issue of Disability**

The ALJ erred in rejecting plaintiff's treating physician's opinions because "the issue of disability is reserved to the Commissioner." [Id.] While the ultimate determination of whether plaintiff is disabled is an issue reserved to the Commissioner, the Social Security "rules provide that [ALJs] must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner." Soc. Sec. Ruling ["SSR"] 96-5p, 1996 WL 374183, at *2.[6] An ALJ must consider a treating physician's opinion on the ultimate issue of disability as he would consider a treating physician's medical opinion, and "if controverted, [it] can be rejected only with specific and legitimate reasons supported by substantial evidence in the record." Reddick, 157 F.3d at 725; see SSR 96-5p, 1996 WL 374183, at *3 ("[O]pinions from any medical source on issues reserved to the Commissioner must never be ignored. The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner.").

Without more, therefore, this reason for rejecting Dr. Curtis's opinion on whether plaintiff was disabled was not legally sufficient.

**b. The Adversarial Nature of Workers' Compensation Medical Reports and Plaintiff's Reason for the Examination**

"[T]he ALJ may not disregard a physician's medical opinion simply because it was initially elicited in a state workers' compensation proceeding." Booth v. Barnhart, 181 F. Supp. 2d 1099, 1105 (C.D. Cal. 2002) (citing Coria v. Heckler, 750 F.2d 245, 247-48 (3rd Cir. 1984)); see also Lester, 81 F.3d at 832 ("[t]he purpose for which medical reports are obtained does not provide a

---

[6] "The Commissioner issues [SSRs] to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the [Social Security Administration]. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (internal citations omitted).

legitimate basis for rejecting them"). Instead, "the ALJ should evaluate the objective medical findings set forth in the medical reports for submission with the worker's compensation claim by the same standards that s/he uses to evaluate medical findings in reports made in the first instance for the Social Security claim." Coria, 750 F.2d at 248.

Here, the ALJ's general and sweeping statements, which appear to denigrate all medical evidence originating in workers' compensation proceedings, and imply that doctors in this field exaggerate the claimants' symptoms, fail to include any specific reason for his decision to discount the opinions of Dr. Curtis in this case. The ALJ improperly disregarded the opinions of Dr. Curtis as a whole due to the fact that they arose from a workers' compensation case.[7]

The Court finds that this was error.

**c. Other Record Evidence**

The ALJ stated that Dr. Curtis's opinions are "not supported by other evidence of record," without providing any description of the records -- whether Dr. Curtis's own notes or other mental health professionals' findings -- that fail to support Dr. Curtis's opinions. [AR at 32.] In fact, the only other psychiatric evaluation mentioned by the ALJ was the February 25, 2011, evaluation by consultative examiner, Dr. Khang Nguyen.[8] [AR at 32, 576-79.] Dr. Nguyen found that plaintiff did not meet the criteria for a specific psychiatric diagnosis at that time, his mental status examination was unremarkable, plaintiff's cognitive function is preserved, and he is able to focus, maintain attention, and understand, remember and follow instructions. [Id.] The ALJ gave Dr.

---

[7] Moreover, to the extent that any of the terms used by Dr. Curtis required "translation" from the workers' compensation context -- including terms such as "moderately limited" or "markedly limited" as used in Dr. Curtis's Psychiatric/Psychological Impairment Questionnaire" -- the ALJ was required to at least indicate that he "recognized the differences between the relevant state workers' compensation terminology, on the one hand, and the relevant Social Security disability terminology, on the other hand, and [that he] took those differences into account in evaluating the medical evidence." Booth, 181 F. Supp. at 1106. He cannot, as he did here, simply reject an opinion based on it being provided in the workers' compensation context.

[8] The ALJ erroneously refers to the consultative examiner as Dr. Nguyen Khan. [Compare AR at 32 with AR at 579.]

Nguyen's evaluation "little weight" because "there is evidence to support mental limitations from the claimant's depression and anxiety." [AR at 32.]

Moreover, after the ALJ rendered his decision, plaintiff submitted additional records to the Appeals Council. [AR at 15.] In connection with his workers' compensation case, on April 28, 2010, plaintiff submitted to an Agreed Medical Examination conducted by Arnold Gilberg, M.D., Ph.D., a psychiatrist. [AR at 1159-75.] Dr. Gilberg diagnosed plaintiff with "Depressive Disorder Not Otherwise Specified, Pain Disorder Associated With Both Psychological Factors and a General Medical Condition, Primary Insomnia, [and] Psychological Factors Affecting Medical Condition (50-pound weight loss)." [AR at 1171.] Dr. Gilberg found that plaintiff "appeared to be experiencing some agitation" as well as "physical and emotional upset." [AR at 1173.] Plaintiff became tearful during the consultation; his concentration and attention were diminished; his ego defenses seemed fragile; depression and anxiety were noted; his affect appeared flat and depressed; and his judgment and insight appeared to be impaired. [Id.] Dr. Gilberg stated that "[p]sychological testing indicates significant levels of distress accompanying physical and health concerns." [AR at 1170.] This opinion, therefore, would appear to support Dr. Curtis's findings.

In short, the ALJ's reason for rejecting Dr. Curtis's opinion does not reach the level of specificity required to reject the opinion of a treating physician. See Embrey v. Bowen, 849 F.2d 418, 421-23 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions.") (footnote omitted).

**d. Plaintiff's Treatment Plan and Conservative Treatment**

The ALJ also found that plaintiff's treatment plan, consisting primarily of biofeedback, regular psychotherapy, and psychotropic medications on an "as needed basis," was not consistent with the limitations found by Dr. Curtis. [AR at 32.] The ALJ also noted that there was no evidence that plaintiff had ever been hospitalized or received inpatient treatment as a result of his psychiatric conditions. [Id.]

However, Dr. Curtis, or others in his office, saw plaintiff fairly regularly between 2006 and 2012. [AR at 308-562, 566-74, 621-30, 1176-79.] Dr. Curtis also prescribed psychotropic medications to be taken on an as-needed basis for plaintiff's anxiety, depression, and insomnia. [Id.] The ALJ failed to state *specifically* how the care plaintiff received from Dr. Curtis was conservative, and pointed to nothing in the record to show that any specific treatment *in addition to* the treatment plaintiff was receiving is a standard method for treating those with plaintiff's mental health impairments. Moreover, the ALJ's additional statement that plaintiff had not been hospitalized or received inpatient treatment does not serve to render the ALJ's reasoning any more specific. The ALJ still fails to show that hospitalizations or inpatient treatment would be standard for treating someone with plaintiff's mental health impairments, or that someone with plaintiff's limitations should be taking medications on something other than an as-needed basis.

As such, this reason for rejecting Dr. Curtis's opinion does not reach the level of specificity required to reject the opinion of a treating physician. See Embrey, 849 F.2d at 421-23.

**2. Conclusion**

Under the factors set forth in 20 C.F.R. §§ 404.1527 and 416.927, the treating relationship that Dr. Curtis had with plaintiff provides a "unique perspective" on plaintiff's condition. See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Orn v. Astrue, 495 F.3d 625, 633 (9th Cir. 2007). Specifically, the nature and extent of Dr. Curtis's long-term treating relationship with plaintiff adds significant weight to his opinions. See 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), 416.927(c)(2)(i)-(ii); Orn, 495 F.3d at 633.

Under these circumstances, the reasons provided by the ALJ for giving little weight to the opinions of Dr. Curtis are not legally sufficient and/or supported by substantial evidence. As a result, the ALJ's RFC assessment is not supported by substantial evidence and remand is required.

**B. The ALJ's Step Five Determination**

Plaintiff contends that the jobs identified by the ALJ at step five of his analysis -- sales attendant and office helper -- are not consistent with the ALJ's RFC finding that plaintiff should "work in solitude and not in coordination with others." [JS at 13 (citing AR at 27).] Moreover, because neither of the identified jobs is performed in isolation, an explanation for the deviation from the job requirements of the Dictionary of Occupational Titles ("DOT") was required and not provided. [JS at 13-18.]

Specifically, the ALJ provided the following hypothetical:

> Q And then for our purposes I have an individual of 50 years of age and a high school education and more consistent with the testimony of the claimant, same occupational profile. I'm going to put the individual at the light exertional level and the limitations I'm going to have is, the handling and fingering bilaterally.
> A I'm sorry. Say what --
> Q All right. Age 51 years of age, light exertion level.
> A No, I got that. I got all that.
> Q With regards to bilateral handling and fingering.
> A That's what I didn't -- I just didn't hear those.
> Q Okay. Frequent not repetitive, and further this is an individual who needs to work in an environment free of excess dust, fumes, smoke. Further, this is an individual who has had a really disturbing and unfortunate dispute with his employer. Although he was ultimately vindicated, there's some psychological consequences to that and I think that as a result of all that and the depression and the anxiety resulting from that, I have an individual who's probably best at simple and repetitive tasks with occasional contact with the public and *work being solitary, not in coordination with others, so he can work around others, but not in coordination with that*.

[AR at 56 (emphasis added).]

The problem here is that the hypothetical presented to the VE differs somewhat significantly from the ALJ's RFC determination. The former stated that the individual could "work around others" but not in coordination with them [id.], e.g., the work itself was solitary, while the RFC stated that the work should be "in solitude" and not in coordination with others [AR at 27; see also AR at 32 ("[T]he undersigned found that the claimant can . . . work in solitude and not in coordination with others.")], thereby implying that plaintiff could not even work in the vicinity of others. This distinction could make a difference in the VE's response to the hypothetical.

On remand, the ALJ should reassess plaintiff's RFC, making clear all limitations set forth in the hypothetical, and determine, at step five, with the assistance of a VE, whether plaintiff is capable of performing jobs that exist in significant numbers in the national economy.[9]

**C. Plaintiff's Credibility**

Plaintiff contends the AL failed to provide clear and convincing reasons for rejecting plaintiff's subjective testimony. [JS at 19-22.] Specifically, he contends that the ALJ failed to credit his testimony that he has constant pain and depression, has trouble with daily grooming, does not socialize, has trouble reaching, sitting, standing, walking, getting along with others, and that he withdraws from others. [JS at 22 (citing AR at 179-82).]

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if the claimant meets the first test, the ALJ may reject the claimant's testimony about the severity of his symptoms "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003). Factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and his conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R. §§ 404.1529(c), 416.929(c).

Where, as here, the ALJ does not find "affirmative evidence" of malingering, the ALJ's reasons for rejecting a claimant's credibility must be clear and convincing. See Benton, 331 F.3d

---

[9] Nothing in this Opinion is intended to disturb the ALJ's step four finding that plaintiff is unable to perform his past relevant work. [AR at 33.]

at 1040 (where there is no evidence of malingering, the ALJ can reject claimant's testimony only by "expressing clear and convincing reasons for doing so."). "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Reddick, 157 F.3d at 722 (internal quotation marks and citation omitted); Berry, 622 F.3d at 1234 (same). The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." Bunnell, 947 F.2d at 345-46 (internal quotation marks and citation omitted). A "reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain." Bunnell, 947 F.2d at 346. As such, an "implicit" finding that a plaintiff's testimony is not credible is insufficient. Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (per curiam).

Here, finding plaintiff's complaints not fully credible, the ALJ discounted plaintiff's testimony as follows:

> The claimant reported that he has severe back pain, carpal tunnel syndrome, depression and anxiety. The claimant indicated that he can stand for one hour due to ankle fatigue and sit for two hours.
>
> . . . .
>
> The claimant's subjective complaints and alleged limitations are out of proportion to the objective clinical findings and observed functional restrictions as noted below. There is no evidence of severe disuse muscle atrophy that would be compatible with his alleged inactivity and inability to function.
>
> . . . .
>
> Although the claimant has received treatment for the allegedly disabling impairments, that treatment has been essentially routine and/or conservative in nature. As discussed below, there is no evidence that the claimant required surgery for his physical condition. Moreover, there is no evidence of psychiatric hospitalization or inpatient mental treatment.
>
> Although the claimant has received various forms of treatment for the allegedly disabling symptoms, which would normally weigh somewhat in the claimant's favor, the record also reveals that the treatment has been generally successful in controlling those symptoms.

[AR at 28.]

Having carefully reviewed the record, the Court concludes that the ALJ's rejection of plaintiff's credibility is not supported by substantial evidence.

First, the ALJ determined that the objective clinical findings did not support plaintiff's complaints, because "[t]here is no evidence of severe disuse muscle atrophy that would be compatible with his alleged inactivity and inability to function." [AR at 28.] While a lack of objective medical evidence supporting a plaintiff's subjective complaints cannot provide the only basis to reject a claimant's credibility (see Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)), it is one factor that an ALJ can consider in evaluating symptom testimony. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); accord Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

Here, the ALJ states that there is no evidence of severe disuse muscle atrophy as a result of plaintiff's alleged inactivity and inability to function. [AR at 28.] The ALJ does not, apparently, include plaintiff's mental health complaints in this reason. However, because, as discussed below, the ALJ fails to provide additional valid reasons for finding plaintiff's allegations regarding his physical limitations not fully credible, the lack of objective medical evidence alone is not a valid basis for rejecting plaintiff's credibility with regard to his pain testimony. Mitchell v. Astrue, 2010 WL 1486475, at *4 (C.D. Cal. Mar. 3, 2010) (the ALJ properly considered the lack of "'evidence of severe disuse muscle atrophy that would be compatible with [plaintiff's] alleged inactivity and inability to function'" as a factor "in finding [plaintiff's] subjective symptoms incredible." (citation omitted)), Report and Recommendation adopted, 2010 WL 1462564 (C.D. Cal. Apr. 8, 2010).

The ALJ also discounts plaintiff's credibility based on the routine and/or conservative nature of his treatment, noting that plaintiff has not received surgery for his physical condition, and there is no evidence of psychiatric hospitalization or inpatient mental treatment relating to plaintiff's mental health condition. [AR at 28.] As previously discussed, the ALJ's finding that plaintiff's mental health treatment had been conservative simply because he had never been hospitalized or received inpatient treatment was unsupported and, therefore, inadequate. [See Discussion infra Part V.1.d.] And, because the matter is being remanded for further consideration of Dr. Curtis's opinions, the ALJ should reconsider plaintiff's limitations alleged as a result of his mental health impairments at that time. With respect to plaintiff's physical conditions, although the ALJ

thoroughly reviewed the medical findings, he makes no mention of any treatment that plaintiff *has* received for his conditions other than chiropractic care, let alone any mention of the results of that treatment. [AR at 29-30.] Thus, this reason for rejecting plaintiff's credibility is not legally sufficient.

Finally, the ALJ discounts plaintiff's credibility based on the fact that treatment has been generally successful in controlling plaintiff's symptoms. Again, the ALJ provides no discussion of the treatment plaintiff has received for his physical impairments, let alone a showing that such treatment indeed has controlled his pain symptoms. And, because the matter is being remanded for further consideration of Dr. Curtis's opinions, the ALJ should also reconsider the effect of plaintiff's mental health treatment on the limitations he alleges as a result of his mental health impairments at that time.

## VI.

## REMAND FOR FURTHER PROCEEDINGS

The Court has discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand, it is appropriate to exercise this discretion to direct an immediate award of benefits. Garrison v. Colvin, __ F.3d __, 2014 WL 3397218, at *20 (9th Cir. July 14, 2014) (setting forth the three-part credit-as-true standard for exercising the Court's discretion to remand with instructions to calculate and award benefits); see also Lingenfelter, 504 F.3d at 1041; Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Benecke, 379 F.3d at 593-96; see also Connett v. Barnhart, 340 F.3d 871 (9th Cir. 2003) (cautioning that the credit-as-true rule may not be dispositive of the remand

question in all cases, even where all three conditions are met). In Garrison, the Ninth Circuit, noting that it had never exercised the flexibility set forth in Connett in a published decision, clarified that the nature of the flexibility described in Connett is "properly understood as requiring courts to remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." Garrison, 2014 WL 3397218, at *21.

In this case, as discussed above, because the ALJ failed to provide legally sufficient reasons for rejecting medical opinion evidence as well as plaintiff's subjective symptom testimony, and because of the ambiguity between the ALJ's RFC and his hypothetical to the VE, it is not clear that if the improperly discredited evidence were credited as true the ALJ would be required to find plaintiff disabled on remand. Thus, the Court finds that there are outstanding issues that must be resolved before a final determination can be made.

In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, the ALJ on remand must reconsider the opinions of Dr. Curtis, including a review and, if necessary, an analysis of any additional documents submitted to the Appeals Council after the ALJ's decision. In assessing the medical opinion evidence of Dr. Curtis, or any other physician, the ALJ must explain the weight afforded to each opinion and provide legally adequate reasons for any portion of the opinions that the ALJ rejects. The ALJ shall reassess plaintiff's RFC, including clarification of the issue of whether plaintiff is limited to working in solitude, or to work that is solitary in nature, if that finding is again warranted. Finally, the ALJ shall determine, at step five, with the assistance of a VE if necessary, whether plaintiff is capable of performing other work that exists in significant numbers in the national economy.

## VII.

## CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: September 18, 2014

Paul L. Abrams

PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE